IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT GOLDSMITH | ) |
| Plaintiff, | ) ) ) |
| | ) No: 12 C 3965 |
| v. | ) ) |
| ERT/CORRECTIONAL OFFICER ZOLECKI, | ) ) |
| Defendant. | ) ) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant Zolecki, by his attorneys and pursuant to Local Rule 56.1(a)(2), submits this memorandum of law in support of his motion for partial summary judgment:

### Introduction

Plaintiff's sole claim in this action is barred because he failed to exhaust the administrative remedies that were available to him. The Prison Litigation Reform Act requires Plaintiff to have exhausted administrative remedies before filing suit because he is a jail inmate and asserts a claim complaining about the conditions of his confinement. Plaintiff offers no evidence, other than his own statement, that he filed a written grievance about Zolecki's alleged conduct. Thus, whether Plaintiff exhausted administrative remedies hinges on his credibility, and under the Seventh Circuit's holding in *Pavey*, this issue is to be decided by the court, not a jury. The record is replete with evidence directly contradicting Plaintiff's version of events, thereby compelling the conclusion that Plaintiff never submitted a grievance about Zolecki. As a result, there is no genuine issue for trial as to whether Plaintiff exhausted administrative remedies, and Zolecki is entitled to judgment as a matter of law.

**Standards for Disposition**

The issue of whether an inmate exhausted remedies as required by the PLRA, including any related fact questions, is to be resolved by the court, not a jury. *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008) (*Pavey I*). When the exhaustion defense is raised, summary judgment is appropriate if the record, viewed in the light most favorable to the inmate, reveals that the defendant failed to exhaust administrative remedies. *Lee v. Hulick*, 2010 WL 3895724 (S.D.Ill. Aug. 24, 2010). Summary judgment is the "put up or shut up" moment in a lawsuit, when the inmate must show what evidence he has that would convince the trier of fact to accept his version of events. *See Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). In order to survive summary judgment, there must be more than "some metaphysical doubt" as to whether the inmate exhausted administrative remedies. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

**Relevant Background**

Plaintiff has been an inmate at the Will County jail since March 8, 2011. (SMF ¶2). Plaintiff alleges that Officer Zolecki came into his jail cell and injured Plaintiff's left shoulder by throwing him into the wall. (SMF ¶5). In his complaint, Plaintiff alleged that the incident occurred on Father's Day, 2011. (SMF ¶6). At his deposition, Plaintiff testified that he cannot recall whether the incident occurred on Easter or on Father's Day, but he knows it occurred on one of those two holidays in 2011. (SMF ¶7). In 2011, Easter was on April 24 and Father's Day was on June 19. (SMF ¶8).

According to Plaintiff, Zolecki came into his cell in order to conduct a "shakedown." (SMF ¶9). Plaintiff's cell was in a housing unit known as B Pod, and he was housed in cell B-14. (SMF ¶11). As a member of the Emergency Response Team ("ERT"), Zolecki was not

2

posted in B Pod or any particular housing unit, but would enter B Pod from time to time. (SMF ¶4).

No one other than Plaintiff witnessed Zolecki's conduct. (SMF ¶12). Plaintiff alleges that he filed a written grievance complaining about Zolecki within a few days of the incident. (SMF ¶18). Plaintiff does not have a copy of the grievance. (SMF ¶19). Grievance forms are in triplicate and the inmate is supposed to keep the pink copy when submitting the grievance. (SMF ¶14). Plaintiff does not know if he failed to keep a copy at the time he submitted the grievance, or if he lost his copy at some point thereafter. (SMF ¶20).

The Sheriff's Office keeps a classification file for each inmate that includes copies of all grievances submitted by that inmate. (SMF ¶17). As of the date that Plaintiff filed this lawsuit, his classification file contained copies of eighty-one grievances that he submitted between March 19, 2011 and May 30, 2012. (SMF ¶21). The classification file for Plaintiff contains no grievance about being thrown against the wall by Zolecki or any other officer. (SMF ¶22).

The Sheriff's Office also keeps a medical file for each inmate that documents all medical treatment requested by and/or delivered to the inmate. (SMF ¶24). At his deposition, Plaintiff testified that one to two months after the incident, he told the jail doctor that his shoulder hurt because an ERT pushed him against the wall. (SMF ¶23). The medical file for Plaintiff contains records showing that Plaintiff saw the jail doctor on: May 30, 2011, June 14, 2011, July 22, 2011, August 12, 2011, October 13, 2011, and November 13, 2011, but there is nothing in those records to indicate that Plaintiff sought or received treatment for his shoulder, let alone that he told the doctor that an ERT pushed him into a wall. (SMF ¶¶24-25).

On May 18, 2011, Plaintiff saw a nurse for his left shoulder and reported that he had been having pain in his shoulder for about a month. (SMF ¶26). He denied suffering any injury to his

3

shoulder but told the nurse that he always sleeps on his left side. (*Id.*). On August 23, 2011, Plaintiff again saw a nurse for his shoulder, reporting that he had been having pain in his shoulder for the past six months. (SMF ¶27). He told the nurse at that time that he did not suffer any injury but believed the discomfort was the result of excessive exercise. (*Id.*).

The Sheriff's Office also keeps a daily handwritten log for each housing unit that shows all of the activity occurring in that housing unit during a given day. (SMF ¶28). The housing log is prepared over the course of a shift by the officer or officers who are assigned to that housing unit. (*Id.*). Among other things, the housing log shows each person who enters or exits a housing unit during a shift. (*Id.*). The housing log for B Pod on April 24, 2011 contains no entry indicating that Zolecki entered that housing unit. (SMF ¶29). The housing log for June 19, 2011 contains no entry indicating that Zolecki entered that housing unit. (SMF ¶30).

The Sheriff's Office also keeps a shift roster for each shift that shows that names and assignments for all of the security personnel who work on a given shift. (SMF ¶31). The shift roster also shows the number of inmates in each housing unit at the beginning and end of the shift, as well as the number of cell searches and pod shakedowns conducted in each housing unit during the shift. (*Id.*). The shift rosters for April 24, 2011 and June 19, 2011 show that no pod shakedowns occurred on those dates, and also shows that Zolecki was not on duty on June 19, 2011. (SMF ¶¶32-33).

## Argument

Plaintiff's action is barred because he failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is a precondition to suit. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 534-35 (7th Cir. 1999). Specifically, the PLRA provides:

4

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). A claim by an inmate alleging that a jail official used excessive force is a claim respecting "prison conditions" and therefore is subject to the PLRA's exhaustion requirement. *Smith v. Zachary*, 255 F.3d 446, 449-50 (7th Cir. 2001).

To satisfy the exhaustion requirement, an inmate must complete the administrative review process according to the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion is not left to the discretion of the court but is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382 (2006). When a grievance process is available and an inmate fails to file a grievance, administrative remedies are not exhausted and the inmate is barred from bringing suit. *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387.

In the present case, there is no dispute that a grievance process was available to Plaintiff. At his deposition, Plaintiff testified not only that he was aware of the grievance process at the jail (SMF ¶¶13-16), but also that he availed himself of that process by submitting a grievance. (SMF ¶18). Thus, the only question is whether Plaintiff actually submitted a grievance as he says.

Aside from Plaintiff's own testimony, there is no evidence that he ever filed a grievance about being thrown into a wall by Zolecki. Plaintiff admits that he cannot produce a copy of the alleged grievance even though the jail procedures allowed him to detach a copy upon submission so that he would have his own copy. (SMF ¶19). The record keeper for the Sheriff's Office has reviewed Plaintiff's file and confirmed that, of the more than 80 grievances submitted by Plaintiff between March 2011 and May 2012, there is no grievance complaining about being mistreated by Zolecki. (SMF ¶¶21-22).

5

These circumstances are similar to those recently addressed by the Southern District in *Lee v. Hulick*. In that case, the inmate brought an action alleging deliberate indifference to his injured finger. 2010 WL 3895724 at *1. The defendants asserted an exhaustion defense and moved for summary judgment. *Id.* The inmate contended that he submitted a grievance about his finger injury, but he was unable to produce a copy of the grievance and the prison had no record of the grievance. *Id.*, at *1-2. The inmate contended that the prison officials ignored his grievance and then transferred him to another prison in order to cover up their failure to address his medical needs. *Id.*, at *3. He also stated that he did not know why he was later transferred to another prison. *Id.*

The court held a *Pavey* hearing to resolve the factual dispute as to whether a grievance had been submitted. *Id.* Because the inmate's testimony was the only "proof" that a grievance was submitted, the court assessed the inmate's credibility. *Id.*, at *5. The court concluded the inmate was not credible based on its finding that the inmate's professed lack of knowledge about the reason for his transfer was contradicted by records in his counseling file which indicated the inmate himself requested the transfer and later inquired about the status of his request. *Id.* The inmate's lack of credibility on that point together with the absence of any evidence corroborating his alleged submission of a grievance led the court to conclude that the inmate had not filed a grievance and therefore had not exhausted administrative remedies. *Id.*

In *Pavey v. Conley*, a similar credibility determination supported the entry of summary judgment on an exhaustion defense. 663 F.3d 899 (7th Cir. 2011) (*Pavey II*). In that case, the inmate testified that he asked a sergeant to help him complain about officers who had broken his arm and the sergeant promised to notify the lieutenant. 663 F.3d at 902. The inmate testified that the lieutenant came to his cell a few hours later and that he told the lieutenant how the

officers' mistreated him. *Id.* The inmate testified that he met with a major the next morning and told the major that he wanted to submit a grievance. *Id.*, at 903. The sergeant denied the inmate had told her that any officers mistreated him and also denied that she promised to notify the lieutenant. *Id.*, at 902. Neither the lieutenant nor the major had any recollection of speaking with the inmate, but the major testified that he would have immediately summoned a grievance specialist if the inmate had told him that he wanted to submit a grievance. *Id.*, at 903.

Weighing this conflicting evidence, the district court concluded that most of the inmate's "testimony was fabricated after the fact in an effort to survive summary judgment." *Id.* Specifically, the court found: (1) the inmate never told the sergeant that he wanted to make a complaint that officers had hurt him; (2) the alleged conversation with the lieutenant never occurred; and (3) the alleged meeting with the major never took place. *Id.* The Seventh Circuit affirmed the entry of summary judgment against the inmate, holding that the trial judge was permitted to credit the sergeant's account rather than the inmate's, and was permitted to conclude that none of the subsequent events had happened either. *Id.*

The circumstances in the present case warrant the same conclusion as *Pavey* and *Lee*. As stated above, Plaintiff cannot produce any evidence to corroborate his alleged submission of a grievance, so his uncorroborated testimony is the only "proof" that he submitted a grievance. Plaintiff's testimony is not credible because his descriptions of events not only contradicts the information documented in his medical records but also conflicts with the records showing the daily activity in the jail on the dates in question.

As an initial point, it is clear that the incident date originally alleged by Plaintiff was not true. Plaintiff originally alleged that the incident occurred on Father's Day in 2011, but Zolecki did not even work that day. (*Cf.* SMF ¶6 and ¶33). During discovery, Plaintiff changed his tune

7

and now says the incident could have occurred on Easter rather than Father's Day. (SMF ¶7). This wavering position on a fact as basic as the date of the incident indicates that Plaintiff is an unreliable witness and casts significant doubt on his testimony.

Further undermining his credibility is his testimony about the jail doctor. Specifically, Plaintiff testified that he saw the jail doctor within one to two months of the incident and told the doctor he needed treatment for his shoulder because an ERT pushed him into a wall. (SMF ¶23). The medical records, however, show that Plaintiff saw the doctor on six separate occasions between May 30, 2011 and November 13, 2011, and at no time did the doctor ever note any complaint by Plaintiff about his shoulder. (SMF ¶24). Thus, Plaintiff's testimony about his communication to the jail doctor is blatantly false.

Moreover, Plaintiff's description of his injury conflicts with the accounts he gave to nurses in May and August 2011. On both of those occasions, Plaintiff told the nurses that he was having shoulder pain because of the way he was sleeping at night or because he was exercising too much, not because an officer threw him into a wall. (SMF ¶¶26-27). The statements Plaintiff made to the nurses for the purpose of receiving medical treatment are completely different than his deposition testimony in this lawsuit, and therefore his deposition testimony is simply not believable.

Plaintiff's testimony is also at odds with records showing the daily activity within the jail on the dates in question. At his deposition, Plaintiff testified that the incident occurred in his jail cell and that Zolecki was in the cell for the purpose of conducting a shakedown. (SMF ¶¶9-10). Plaintiff further testified that while he cannot recall the specific date of the incident, he knows it occurred on either Easter or Father's Day in 2011. (SMF ¶7). Plaintiff's testimony cannot be true because the B Pod housing log for Easter and Father's Day 2011 shows that Zolecki never

8

entered that housing unit on those dates. (SMF ¶¶29-30). In addition, the shift rosters for those dates show that no shakedowns were conducted on those dates, and show that Zolecki did not ever work on June 19, 2011. (SMF ¶¶32-33). These records demonstrate that Plaintiff's version of events is fabricated because the factual premise of his claim – that Zolecki entered his cell to conduct a shakedown – simply did not happen.

Because Zolecki was never in Plaintiff's cell, there was no encounter between them and Plaintiff had no reason to submit a grievance. This explains why there is no copy of a grievance about Zolecki in Plaintiff's file. It also explains why Plaintiff did not immediately seek medical treatment for an incident that allegedly produced a torn rotator cuff. Furthermore, it explains why Plaintiff repeatedly failed to mention being thrown into a wall when he finally did seek medical treatment for his shoulder.

## Conclusion

Because Plaintiff never submitted a grievance about Zolecki, he failed to exhaust administrative remedies before filing this suit as required under the PLRA. The failure to exhaust administrative remedies bars Plaintiff from bringing this action, and therefore Zolecki is entitled to judgment as a matter of law. Accordingly, Zolecki respectfully requests that this Court enter an order granting summary judgment in his favor and against Plaintiff, and granting him such further and additional relief as this Court deems proper and just.

Respectfully submitted,

ERT/CORRECTIONAL OFFICER ZOLECKI

Martin W. McManaman
Patrick R. Moran
LOWIS & GELLEN LLP
200 West Adams Street
Suite 1900
Chicago, Illinois 60606
(312) 364-2500

s/ Martin W. McManaman
Attorney for Defendant