IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT GOLDSMITH, )
)
Plaintiff, )
) No: 12 C 3965
v. )
)
ERT/CORRECTIONAL OFFICER ZOLECKI, )
)
Defendant. )

### DEFENDANT'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS

Defendant Zolecki, through his undersigned attorneys and pursuant to Local Rule 56.1(a)(3), submits the following statement of material facts in support of his motion for summary judgment.

1. Plaintiff asserts a Section 1983 claim alleging that Zolecki used excessive force against him. This Court has jurisdiction over that claim pursuant to 28 U.S.C. §1331, and venue is proper in this District. (*See* Complaint, attached as Exhibit A).

2. On March 8, 2011, Plaintiff was admitted to the Will County jail as an inmate and has remained incarcerated at the jail to the present time. (Deposition of Plaintiff, 12:23 – 13:4, attached as Exhibit B).

3. Zolecki is a correctional officer with the Will County Sheriff's Office and is a member of the Emergency Response Team at the Will County jail. (Ex. A, p. 4).

4. As a member of the Emergency Response Team ("ERT"), Zolecki was not posted in B Pod or any particular housing unit, but would enter B Pod from time to time. (Ex. B, 6:20 – 7:2).

5. According to Plaintiff, Zolecki came into his jail cell and injured Plaintiff's left

shoulder by throwing him into the wall. (Ex. B, 23:22 – 24:24).

6. In his complaint, Plaintiff alleged that the incident occurred on Father's Day, 2011. (Ex. A, p. 4).

7. At his deposition, Plaintiff testified that he cannot recall whether the incident occurred on Easter or on Father's Day, but he knows it occurred on one of those two holidays in 2011. (Ex. B, 19:13-23).

8. In 2011, Easter was on April 24 and Father's Day was on June 19. (Printout of 2011 calendar, attached as Exhibit C).

9. According to Plaintiff, Zolecki came into his cell in order to conduct an inspection known as a "shakedown." (Ex. B, 21:2-6).

10. A shakedown is where several officers simultaneously conduct unannounced searches of multiple cells within a housing unit. (Ex. B, 22:23 – 23:18; 29:4-9).

11. Plaintiff's cell was in a housing unit known as B Pod, and he was housed in cell B-14. (Ex. B, 20:3-20).

12. Aside from Plaintiff and Zolecki, no one else was in the cell and no one else saw Zolecki throw Plaintiff into the wall. (Ex. B, 28:17-22).

13. The Will County jail has a grievance procedure for inmate complaints including complaints about misconduct or mistreatment by correctional officers. (Ex. B, 38:10 – 39:1; Excerpt from Inmate Handbook, attached as Exhibit D-1).

14. Inmates submit grievances in writing by using a pre-printed form entitled Inmate Request Form (Form #22). The form consists of three colored sheets and writing placed on the top sheet is carbon copied to the sheets below. (Ex. B, 53:14 – 55:9; Inmate Request Form attached as Exhibit E).

15. The top sheet is pink and the inmate is supposed to detach and keep the pink sheet when submitting a grievance. (Ex. B, 55:14-24; Ex. E).

16. An inmate submits a grievance by placing it in a tray on the pod officer's desk which is located in the common area of the inmate's housing unit. (Ex. B, 37:14-23).

17. After an inmate submits a grievance, the white sheet is detached and kept in the inmate's classification file. (Affidavit of C. Miller at ¶3, attached as Exhibit D).

18. Plaintiff states that he submitted a grievance complaining about Zolecki within a day or two after being thrown into the wall. (Ex. B, 37:11-13).

19. Plaintiff does not have a copy of that grievance. (Ex. B, 63:15-18).

20. Plaintiff believes that he may have forgotten to detach the top sheet when he submitted the grievance or that he may have lost his copy at some point thereafter. (Ex. B, 54:2-7; 56:11-15).

21. Plaintiff's classification file contains copies of 81 grievances that he submitted between March 8, 2011 and May 30, 2012. (Ex. D at ¶4 and D-2).

22. Plaintiff's classification file contains no grievance about being thrown against the wall by Zolecki or any other officer. (Ex. D at ¶5).

23. At his deposition, Plaintiff testified that one to two months after the incident, he told the jail doctor that his shoulder hurt because an ERT pushed him against the wall. (Ex. B, 33:11 – 34:4).

24. The medical file for Plaintiff contains records showing that Plaintiff saw the jail doctor on: May 30, 2011, June 14, 2011, July 22, 2011, August 12, 2011, October 13, 2011, and November 13, 2011. (Ex. D at ¶7 and D-3).

25. None of the records for any of those six separate visits with the jail doctor

contains anything indicating that Plaintiff told the jail doctor that his left shoulder was hurting, let alone that his shoulder hurt because an ERT pushed him against the wall. (*Id.*).

26. On May 18, 2011, Plaintiff told a nurse that he was having pain in his left shoulder. The nurse attempted to determine what brought about his current condition and Plaintiff told the nurse that there was no specific event or injury. Instead, Plaintiff told the nurse that he always sleeps on his left side. (Ex. D-3 at CCS 192).

27. On August 23, 2011, Plaintiff saw a nurse for his shoulder again. The nurse attempted to determine what brought about his current condition and Plaintiff told the nurse that he believed the shoulder pain was the result of excessive exercise. Plaintiff also told the nurse there was no specific event where he was injured. (Ex. D-3 at CCS 45-46).

28. Each housing unit in the jail has a log book, known as the housing log, that shows all of the activity occurring in that housing unit during a given shift. The housing log is generated on a daily basis over the course of a shift by the officer or officers who are assigned to that housing unit. Among other things, the housing log shows each person who enters or exits a housing unit during a shift. (Ex. D at ¶¶8-9 and D-4).

29. The B Pod housing log for April 24, 2011 contains no entry indicating that Zolecki entered that housing unit. (Ex. D at ¶11 and D-4).

30. The B Pod housing log for June 19, 2011 contains no entry indicating that Zolecki entered that housing unit. (*Id.*).

31. The Sheriff's Office also keeps a shift roster for each shift that shows that names and assignments for all of the security personnel who work on a given shift. The shift roster is prepared by the watch commander for a given shift. The shift roster also shows the number of inmates in each housing unit at the beginning and end of the shift, as well as the number of cell

searches and pod shakedowns conducted in each housing unit during the shift. (Ex. D at ¶¶12-13).

32. The shift roster for April 24, 2011 shows that no pod shakedowns occurred during any of the three shifts on that date. (Ex. D at ¶15 and D-5).

33. The shift roster for June 19, 2011 shows that Zolecki was not on duty and that no pod shakedowns occurred during any of the three shifts on that date. (*Id.*).

Respectfully submitted,

ERT/CORRECTIONAL OFFICER ZOLECKI

s/ Martin W. McManaman
Attorney for Defendant

Martin W. McManaman
Patrick R. Moran
LOWIS & GELLEN LLP
200 West Adams Street
Suite 1900
Chicago, Illinois 60606
(312) 364-2500